# Tindel *v.* Park, Appellant.

*Limited partnership—Voluntary dissolution—Act of June 2, 1874.*

Where a limited partnership association, organized under the act of June 2, 1874, is " dissolved by the voluntary action thereof," the winding up of the business of the association, when any of the partners insist upon it, must be by three trustees, as provided by § 9 of the act.  In such a case a bill in equity for an account and a receiver cannot be sustained.

When such an association ends by its own limitation it is dissolved " by the voluntary act thereof," within the meaning of the act.

*Equity—Jurisdiction—Dissolution of limited partnership.*

Where the articles of a limited partnership association limit the duration of the association for five years, and the partners voluntarily continue the business for six months after the expiration of the five years, a court of equity cannot, by assuming jurisdiction of the accounts of the business for the last six months, include the business transacted under the limited partnership articles, upon the principle " that where a court of equity has jurisdiction of a cause, it will decide all that is equitably cognate to it."

Where the legislature has limited or abolished equitable jurisdiction, equity will regard the law.

The method provided by the act of June 2, 1874, for settling the accounts of a limited partnership association, where the dissolution of the association has been voluntary, supersedes the jurisdiction of equity in such a case.

Where, however, the dissolution is involuntary, either by disagreement among the partners or by insolvency, equity will entertain jurisdiction by bill to wind up and distribute the assets of the association among creditors and members.

Argued March 23, 1893.    Appeal, No. 221, Jan. T., 1893, by defendant, James H. Park et al., from decree of C. P. No. 2, Phila. Co., Dec. T., 1890, No. 601, on bill in equity in favor of plaintiff, Adam Tindel.    Before WILLIAMS, McCOLLUM, MITCHELL, DEAN and THOMPSON, JJ.

Bill in equity for an account and receiver.

The bill also asked for an injunction to restrain the use of the word "imperial" unless said trade mark and good will be accounted for by defendants as part of the assets.    There was no specific finding or exception upon this point or appraisement or allowance for good will, etc.

The facts of the case appear by the opinion of the Supreme Court.    The master, Carroll R. Williams, Esq., reported in favor of plaintiff, and his report was, upon exception, confirmed by the court below.

*Errors assigned* were, among others, (1) in not dismissing the bill; (6) in not decreeing that there could be no distribution except according to § 9 of the act of June 5, 1874, P. L. 271.

*John G. Johnson,* for appellant.—The decree is erroneous, because parties, viz., creditors, were not before the court.

There should have been no decree of distribution of the assets of the association until after a proper opportunity had been offered for the creditors primarily interested in the assets to present their claims in a proceeding in rem, in which the decree would protect all defendants compelled to pay over moneys.

The act points out a method by which distribution can be made in such a way as to enable all parties interested to be heard.

A joint stock company, upon the expiration of the term of years fixed for its existence, is within the provisions of the act.

*Hunn Hanson,* for appellee.—When the association runs the course marked out for it when it was created, and ends at the time its recorded statement sets forth, there is nothing in this behalf for those interested that they do not know ; and hence no need of the machinery of publication and of liquidating trustees.

Each partner undoubtedly has a right, as to the six months after the expiration of the term of partnership under the articles, to a bill for account and distribution. The entire subject-matter is cognizable in equity upon the familiar ground expressed generally in 1 Story, Eq. Jurisp. §§ 64, 67, that where a court of equity has jurisdiction of a cause it will decide all that is equitable cognate to it, a principle followed in Wilhelm's Ap., 79 Pa. 120.

OPINION BY MR. JUSTICE DEAN, April 3, 1893 :

The bill of plaintiff in this case sets out that he and defendants on the 17th of July, 1885, formed a partnership under act of 2d of June, 1874, authorizing the formation of "Limited Partnerships." The purpose of the partnership was the manufacture of steel. The business was to be located in Philadelphia. The amount of capital was $25,000, and each of the three partners was to contribute one third. The duration of the partnership was to be five years; at the expiration of the term the partners voluntarily, without written agreement, continued the business six months longer, when by mutual consent the partnership ceased. That it had been very successful, large profits had been realized, and there was no indebtedness to third persons. That the defendants had in their possession all the assets of the association or partnership, as well as the books and papers showing its transactions from its commencement. He therefore prayed that defendants be directed to fully account, and that a proper person be appointed to collect outstanding debts and take charge of all the assets of the partnership and make distribution thereof among the partners as the court might order.

The defendants answered, by admitting, substantially, the

material averments of plaintiff's bill, except that, as to indebtedness, they said: "We do not know of any considerable indebtedness owing by it"—the association. And they further, under advice of counsel, denied plaintiff's right to an account by bill, and averred that the only method of settlement was that prescribed in the act of 1874, under which the partnership was organized, which they had fully tendered plaintiff and were at all times willing to adopt.

The court appointed Carroll R. Williams, Esq., examiner and master, who, in a very clear and concise report, determines amount and character of the assets, and makes distribution; to which report, assuming that he had jurisdiction, there was not, nor could there have been, any well founded exception. His report was approved and final decree made as suggested by him.

From this decree, the defendants took this appeal. Of the seven assignments of error, the determination of the sixth disposes of the case here, for all of them are really included in this one.

It is as follows: " 6th. The court erred in not decreeing that there could be no distribution of assets amongst the members of the association, excepting through three liquidating trustees, appointed in accordance with the provisions of the 9th section of the act of the 2d of June, 1874."

So far as the merits of the case are disclosed in the averments of the bill and answer, as also in the report of the master, it would accord with our inclinations to dismiss the appeal. The association owes no debts known to any of the members ; it is highly probable there is not a single unpaid creditor; the findings of the master are true ; the distribution made by him is in accordance with these facts. But, if the court had no jurisdiction by bill in equity over the subject of the complaint, the decree must be reversed.

This association was organized under the act of June 2, 1874, providing for the organization of "Joint Stock Companies or Limited Partnerships." The members of an association under this act are as rigidly protected against general liability as the stockholders of any corporation. If the provisions of the law be strictly observed, the individual loss can not exceed the individual contribution to the joint capital. The sale of the partnership interest is not so easily made as the

transfer of a certificate of stock by a member of a corporation, nor is the membership the subject of sale or testamentary disposition, as a matter of legal right.   No certificates, representing the fractional interest of the members, under a seal of the association, are issued for purposes of transfer.   In these and a few other particulars, the joint stock company is distinguishable from a stock corporation; but in the essential feature, the immunity of the members from individual liability for debts of the association and the exclusive liability of the assets of the association for such debts, they are the same.

They are a sort of halfway association between a voluntary partnership of unlimited individual liability, and a corporation aggregate.   Its existence, with all its rights and liabilities, being wholly statutory, wherever the statute provides a method of formation, continuance, or ending, it must be strictly pursued.

The 8th section of the act of 1874 provides how the association may be dissolved : " 1.  Whenever the period fixed for the duration of the association expires.   2.  Whenever by a vote of a majority in number and value of interest, it shall be so determined and notice of such winding up shall be given by publication in two newspapers, " etc.

Then comes the 9th section, which provides : " When any such partnership shall be dissolved by the voluntary action thereof, its property shall be applied and distributed as follows :

" 1.  To the payment of all debts for wages of labor.

" 2.  To the satisfaction of its other liabilities and indebtedness.

" 3.  After payment thereof, the same shall be distributed to and among the members thereof in proportion to their respective interests in the following manner :

" 4.  (By amendment of the 10th of May, 1889.)  Three liquidating trustees, not more than two of whom shall have been a manager of the association so dissolved and in liquidation, shall be elected by the members of the association, who shall have full power to settle the affairs of the association and distribute the assets thereof, after the payment of the debts, among the members, under the direction of the court of common pleas of the proper county."

It seems to us clear, that, by the terms of the act, the wind-

ing up of the business of this association, when the defendants insist upon it, must be by three trustees, because the very contingency has happened for which the act provides. It says, " When any such partnership shall be dissolved by the voluntary action thereof." It was to exist for five years ; this period had passed; the dissolution had occurred. That the end was fixed five years before in the agreement, did not change the voluntary nature of it. The volition of the members could as well be announced then as at any time after it had commenced its existence. Of course their will, expressed at the beginning, could have changed during its existence, and by the registration of new articles its life could have been prolonged; or, they could have shortened the period by agreement before the expiration of the five years; but they did neither; therefore, the voluntary dissolution which they contemplated, agreed upon, and announced to the public by registration, took place at the end of the five years.

The learned master follows the opinion of the common pleas of Delaware county in Gethen v. The Chester Grocery Co., 2 Del. Co. R. 452, which holds, that when the association ends by its own limitation, that is not a dissolution " by the voluntary act thereof," and therefore, the act has provided no method for settling its affairs and distributing the assets.

As has been seen, we dissent from this construction of such agreements. The act provides for the only possible voluntary dissolution of the association :

1. By agreement of members as announced in the articles of association.

2. By agreement of a majority in number and value of interest after the formation of the association, but before expiration of time fixed at organization.

Such partnership may be dissolved by the consent of all the members, and a settlement made among themselves without the intervention of trustees, but in that case, as to existing liabilities of the partnership, they become individually answerable. If they desire protection against other than the limited liability of the partnership, its business at dissolution must be settled in the mode pointed out by the act itself. Any member can insist on the statutory settlement, if he desires to guard against possible individual liability.

But the act makes no provision for involuntary dissolution on complaint of a member, not a majority in number and value, who may allege fraud or mismanagement on part of a majority in number and value; nor for a dissolution by insolvency. In such cases, on due proof, a court of equity would entertain jurisdiction by bill, wind up and distribute the assets of the association among creditors and members. Here the act provided for this voluntary dissolution, and it must be followed.

It is argued by appellee, that, even if the dissolution by expiration of the five years was voluntary, and within the act, yet the partnership continued for six months after. That, as to this time, it was nothing but a common law partnership, and as equity would entertain jurisdiction in settlement of these accounts, then, for the purpose of accomplishing all the equities of the partners, it would include the business transacted under the " limited partnership," upon the principle, " That where a court of equity has jurisdiction of a cause, it will decide all that is equitably cognate to it."

This rule never was of very certain application. Text writers on equity jurisprudence have vainly tried to reconcile decisions, and elicit from them some unvarying test which should determine when it should be invoked and when rejected, but are able to lay down only this:

" Where equity has undoubted jurisdiction over one subject of a contention, it will assume jurisdiction over other matters between the same parties determinable at law, if such jurisdiction be necessary to work out complete equity." This is only a repetition of the rule, and in substance leaves it to the conscience of each chancellor or judge, just what matters shall be included in the issue before him.

We see no reason in this case for holding, that, because equity has, under the act of 1840, undoubted jurisdiction to settle the partnership accounts for six months, it should also, in the same suit, settle the accounts of the limited partnership for the preceding five years. It has long been established that the most effective and convenient proceeding for settling ordinary partnership accounts is by bill in equity; the intervention of a jury is wholly unsuited to the nature of the investigation, and therefore the law is an inadequate remedy. But the form of proceeding for the settlement of this partnership under the

act of 1874 is not an inadequate remedy. Three trustees are to be selected by the members of the association to settle the accounts, and make distribution under the supervision of the court. This method is not materially different from that pursued in equity, and by it the same results can be reached. Besides, we doubt if a higher equity could be pleaded than the right of a litigant to the choice of trustees under a law, on the faith of which he embarked his money.

Then, there is another rule of which equity takes notice, that where the legislature has limited or abolished equitable jurisdiction, equity will regard the law.

The jurisdiction which equity had assumed over all sorts of partnership accounts was well known to the legislature of 1874; yet, in this form of accounts, a special method for their settlement was provided by law. Evidently, it was intended to limit the jurisdiction of equity, where the dissolution of the statutory partnership was voluntary. We must so regard it.

So far as concerns these parties, we regret the necessity for our decree, for we doubt if the apparently just adjudication of this matter by the learned master and court below can be improved on, even after the vexation and expense incident to a settlement by trustees. But, we are unwilling to make a bad precedent for the settlement of accounts on a voluntary dissolution of a partnership under the act of 1874. Therefore, the decree of the court below is reversed, and the bill is dismissed at costs of appellee.