## Shufflebottom v. The Penn Iron Company, Limited.

*Limited partnership associations—Ending of, by its own limitation—Voluntary dissolution — Transferrer of stock—Appraisement of transferee's interest—Ending of term of partnership—Notice of—Acts of June 2, 1874, and June 25, 1885.*

1. The transferee of an interest in a limited partnership association not elected to membership cannot, on petition to the court, have an appraisement made of his interest as provided by the Acts of June 2, 1874, P. L. 271, and June 25, 1885, P. L. 182, after the appointment of liquidating trustees on voluntary dissolution of the partnership.

2. Dissolution by resolution of the stockholders of a partnership association at the expiration of the prescribed period is a voluntary dissolution within the meaning of the acts.

3. The acts do not compel payment of the value of the stock as agreed upon or ascertained to such transferee, but if the other members do not do so the business must be discontinued.

4. Such transferee of stock is presumed to have known the date on which the term of the partnership ended, as he was bound by the agreement originally entered into to end the partnership on that date.

Rule to show cause why an appraiser should not be appointed. C. P. Lancaster Co., Trust Book No. 26, page 3.

*John A. Coyle*, for rule; *John E. Malone*, contra.

HASSLER, J., July 8, 1922.—The petitioners in this case ask for the appointment of an appraiser to appraise the interest of Charles H. Shufflebottom, Jr., in the Penn Iron Company, Limited.

The facts are not in dispute, and are as follows: The "Penn Iron Company, Limited," was organized on Feb. 14, 1901, under the Act of June 2, 1874, P. L. 271, to exist for a period of twenty years, that is, until Feb. 14, 1921, with a capital stock of $200,000. John Lorentz subscribed for $3500 of it, being less than 2 per cent. of the whole amount. He was the owner of this stock at the time of his death on Feb. 19, 1917, and Charles H. Shufflebottom, Sr., his executor, sold and transferred it to Charles H. Shufflebottom, Jr., the petitioner. On Jan. 18, 1921, a meeting of the company was held, notice of the same having been given to Charles H. Shufflebottom, Sr., the executor of John

3 D. & C.

Lorentz, deceased, who was present at it. A resolution was adopted at the meeting to dissolve the company because, as was stated in the resolution, the term of its existence would expire in a few weeks. At the same time three trustees were elected to wind up its business and distribute the assets according to law. The petitioner, Charles H. Shufflebottom, Jr., was never elected to membership in the company, never requested such election, nor did he give notice of his ownership of any stock in it to any one connected with it until July 18, 1921.

The Act of June 25, 1885, P. L. 182, which is a supplement of the Act of 1874, under which the company was organized, provides that the interest in associations formed under the Act of 1874 shall be personal estate, and may be sold and transferred, but "the transferee of any interest in such association shall not be *entitled to any participation in the subsequent business of such association,* unless elected to membership therein by a vote of the majority of the members in number and value of their interest." It also provided that any change of ownership of such an interest, which is not followed by election to membership, shall entitle the owner or transferee only to the value of his holdings at a price and upon terms to be mutually agreed upon, and in default of such an agreement, at a price and upon terms to be fixed by an appraiser to be appointed by the Court of Common Pleas of the proper county. It is under this act that we are asked to appoint an appraiser.

An association formed under the Act of 1874 is a partnership. At common law a partnership is liable to be dissolved by the death of a partner or the sale of his interest. The purpose of the Act of June 25, 1885, P. L. 182, is to prevent the dissolution of an association, formed under the Act of 1874, upon the death of one of its members or the sale of his stock, by providing how the transferee of such stock may become a member, and also providing how the value of his stock, if not agreed on, shall be ascertained, in case he does not desire or the other members refuse, upon his request, to elect him to membership: Carter v. Producers Oil Co., 200 Pa. 579. The act does not compel any one to pay the value of the stock so agreed upon, or ascertained, to such transferee, but the other members cannot continue the business of the association unless they do pay it. If they do not do so, its business must be discontinued, its assets sold, and the proceeds divided among the stockholders, after the payment of debts *pro rata,* regardless of the valuation which has been placed upon their stock. That is exactly what is being done in this association, so that nothing would be accomplished by the appointment of an appraiser.

That the petitioner was not notified of the meeting at which the resolution to discontinue the business of the association was adopted and the liquidating trustees elected was because he gave no notice of his ownership of stock in it, but it was not necessary for him to have notice. He is presumed to have known that the term for which the association was organized ended Feb. 14, 1921. Its dissolution at that time was the voluntary act of all the stockholders, including the petitioner, because it was fixed as the date of such dissolution by all of the stockholders when it was organized, and subsequent stockholders were bound by the agreement made by those who originally owned the stock which has been acquired by them. Dissolution by reason of the expiration of the term is one of the two ways in which an association can be dissolved under the Act of 1874. The act also provides how this shall be done and what shall be done with the assets of the association: Tindel v. Park, 154 Pa. 36. This act was followed in all' particulars by the members of this association in their proceeding to liquidate it. The appointment of an

appraiser as asked for would, in our opinion, interfere with what is being done strictly in accordance with law, and we do not think that the act requires us to appoint an appraiser under these circumstances.

No harm can come to the petitioner by a refusal to appoint one. If the liquidating trustees fail to either promptly or properly perform their duties, the petitioner has a remedy against them. The testimony submitted to us shows that they are justified in the delay that has occurred in selling the real estate of the association, and that they are honestly endeavoring to obtain the best price possible for it. We refuse to appoint an appraiser and discharge the rule to show cause why such an appointment should not be made.

Rule discharged.

From George Ross Eshleman, Lancaster, Pa.